**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | |
|---|---|
| **Nichols plc**, a United Kingdom corporation, and **ZB Importing, Inc.,** an Illinois corporation, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 15-cv-5857 ) ) |
| v. | ) ) |
| **Golden Star Wholesale Incorporated**., a Michigan corporation, | ) ) ) |
| Defendant. | ) |

**COMPLAINT AND JURY DEMAND**

Plaintiffs Nichols plc ("Nichols") and ZB Importing, Inc. ("ZB") and (ZB and Nichols collectively referred to as "Plaintiffs") complain against Defendant Golden Star Wholesale Inc. ("Golden Star") as follows:

**THE PARTIES**

1. Nichols is a corporation organized and existing under the laws of the United Kingdom. Nichols maintains its principal place of business at 5 Woodlands Park, Ashton Road, Newton-le-Willows, UK WA12 OHH. Nichols sells a broad portfolio of popular branded beverages, including still, cordial, and carbonated drinks. One of its fruit flavored, non-alcoholic beverages is sold under the trademark VIMTO. Nichols is the owner of the VIMTO trademark and corresponding U.S. Trademark Registration Nos. 1159366, 215478, and 3754958 (collectively the "VIMTO Registrations"). True and correct copies of these registrations are attached as **Exhibit A**, **Exhibit B**, and **Exhibit C** respectively. Registration No. 1,159,366 is incontestable and constitutes conclusive evidence of Nichols' exclusive right to use the VIMTO mark throughout the United States on fruit flavored drinks containing water. Registration Nos.

215478 and 3754958 constitute prima facie evidence of the validity of the VIMTO mark, Nichols' ownership of the VIMTO mark, and Nichols' exclusive right to use the VIMTO mark in conjunction with the goods listed in the 215478 and 3754958 registrations throughout the U.S.

2. ZB is a corporation organized and existing under the laws of Illinois. ZB maintains its principal place of business at 5400 W. 35th Street, Cicero, Illinois 60804. ZB makes, bottles, and distributes a variety of specialty food and beverage products to retailers throughout the United States. ZB owns the exclusive right to distribute VIMTO beverages in the United States and Canada.

3. Upon information and belief, Golden Star is a corporation organized under the laws of Michigan, with its principal place of business at 373 Minnesota Avenue, Troy, Michigan 48083. Upon information and belief, Golden Star imports and sells food products to retailers in the United States.

4. This dispute is about Golden Star's purchase and sale of VIMTO beverages that are not authorized or intended for sale in the United States. These beverages were made and bottled by or with the authorization of Nichols, but they were authorized, sold, and intended for sale and consumption outside the United States. Such products are commonly referred to as "gray market" or "parallel import" products. The gray market VIMTO beverages Golden Star is selling are not properly labelled under U.S. law and the ingredients of those VIMTO beverages are different from the ingredients of the VIMTO beverages authorized for sale in the U.S. market. Indeed, at least one ingredient used in Golden Star's gray market VIMTO beverages, Allura Red, requires Food and Drug Administration certification for sale in the U.S. Upon information and belief, the Allura Red in Golden Star's gray market VIMTO product has not been FDA certified and thus Golden Star's VIMTO products cannot be legally sold in the U.S.

5. Golden Star is fully aware of the illegality of dealing in gray market products, having been sued previously by ZB in connection with another branded product and having corresponded with at least a third trademark owner in connection with yet another product for which ZB has the exclusive U.S. distribution rights. Golden Star and the principals of Golden Star, Ramzi Seman, Fahdi Seman, and Joseph Seman, were involved in these prior disputes with ZB, yet they continue to snub their noses at the law as described herein.

### JURISDICTION AND VENUE

6. This is an action for: (1) trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1124, and 1125(a); (2) Illinois Uniform Deceptive Trade Practices Act; and (3) common law trademark infringement and unfair competition under Illinois law.

7. This civil action is brought under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; accordingly, jurisdiction is conferred under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).

8. This Court has personal jurisdiction over Golden Star because Golden Star has committed one or more of the acts complained of in this Complaint within the United States of America and within this State and this judicial district. Golden Star has sold the gray market VIMTO to at least one retailer in this judicial district, Habash Trading located at 6135 South Nottingham Ave, Chicago, IL 60638.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) in that Golden Star is engaged in business and solicitation in this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

**FACTS**

10. Nichols is a global beverage company that has been operating for nearly 100 years. In 1908, John Nichols created a beverage made from a proprietary blend of fruits, herbs, and spices. Mr. Nichols marketed and sold his unique beverage under the trademark VIMTO. In 1929, Mr. Nichols incorporated his business as J.N. Nichols & Company Ltd., which would later change its name to the named Plaintiff Nichols. Four years later, Nichols filed its first trademark application in the U.S. to register the mark VIMTO for "maltless beverages sold as soft drinks, sirups, and essences for making the same mineral potable water, and ginger ale." (Ex. B.)

11. VIMTO is sold around the world and is especially popular with persons having a Middle Eastern background. Nichols has sold VIMTO products throughout the Middle East for more than 80 years through its exclusive licensee, Aujan Soft Drinks Limited ("Aujan") and its predecessors. The label for VIMTO produced by Aujan and designated for sale in the Middle East is shown below (the "Middle East VIMTO label"):



12. VIMTO products with the Middle East VIMTO label are not authorized by either Nichols or ZB for sale in the United States and do not comply with various U.S. laws.

13. In addition to the Middle East, other primary markets for VIMTO are Europe, Africa, the Far East, and the United States. ZB (d/b/a Ziyad Brothers of Illinois) is Nichols' exclusive distributor of VIMTO products in the United States. The bottle for VIMTO products designated for importation and sale into the U.S. is labelled as shown below ("U.S. VIMTO label"):



14. Nichols authorizes products bearing both the Middle East VIMTO label and the U.S. VIMTO label. The U.S. VIMTO label was created so as to diligently adhere to U.S. importation, food, and packaging and labeling requirements. VIMTO beverage products having the Middle East VIMTO label are not intended for sale in the U.S and are not authorized by Nichols for importation, distribution, or sale in the U.S. These labels are materially different at

least because the U.S. VIMTO label includes the serving size, the number of servings, number of calories derived from any source and derived from the total fat in each serving size, the amount of nutrients in each serving size, and an expression of volume in ounces required of similar products sold within the U.S. In addition, as VIMTO is sold as a liquid concentrate, the recommended dilution formula in tablespoons and milliliters is listed on the U.S. VIMTO label. This information is not included on the Middle East VIMTO label and the dilution instructions on the Middle East VIMTO label result in a different concentration from the dilution instructions on the U.S. VIMTO label.

15. ZB has been using the VIMTO trademark and selling VIMTO beverage products in the U.S. since at least 1994. Since that time, ZB has spent substantial time, money, and effort in advertising, promoting, and marketing VIMTO beverage products throughout the U.S. Because of its efforts and sales for many years, ZB has acquired valuable goodwill in the VIMTO trademark.

16. The VIMTO trademark is distinctive in the trade and in the minds of purchasers. Many purchasers are already aware of the VIMTO trademark before their first US purchase because the VIMTO trademark is well known throughout the world, especially in Europe, the Middle East, and Asia.

17. Notwithstanding Plaintiffs' prior, continuous, and extensive use and promotion of the VIMTO trademark and use of the U.S. VIMTO label, Golden Star has sold and on information and belief is continuing to sell, in commerce, beverages under the VIMTO name and bearing the Middle East VIMTO label not authorized for sale or distribution in the U.S. (the "Unauthorized Products"). On information and belief, Golden Star is importing itself, or working in cooperation with someone else who is importing, the Unauthorized Products.

18. The Unauthorized Products are being imported, sold and distributed in the U.S. without Nichols' or ZB's consent and are likely to cause consumer confusion, mistake or deception. Purchasers are likely to believe that the Unauthorized Products are intended by Nichols for importation, sale and distribution in the U.S. when they are not. Purchasers may be disappointed and upset because the Unauthorized Products do not contain nutritional information, serving size, number of servings per bottle, or the liquid measure of the contents in fluid ounces. Purchasers may also be dissatisfied by the taste of the Unauthorized Products which results from the different ingredients and dilution ratio versus the U.S. authorized product. Purchasers may be confused because the labels of the Unauthorized Products do not reference Nichols' exclusive U.S. distributor, ZB, but instead indicate that the product is produced in Saudi Arabia by Aujan and bottled by Aujan Industries Co. For information and suggestions, the Middle East VIMTO label directs consumers to www.vimtoarabia.com instead of ZB's address, www.ziyad.com.

19. Because the Unauthorized Products bear the Middle East VIMTO label, which does not contain the nutritional and other information required by various U.S. laws and included on the U.S. VIMTO label, Golden Star's sale of the Unauthorized Product violates: (1) the Tariff Act, 19 U.S.C. § 1595(a); (2) the Food, Drug and Cosmetic Act, 21 U.S.C. § 343; and (3) the Fair Packaging and Labeling Act, 15 U.S.C. § 1453.

20. Golden Star is aware of Plaintiffs' objections to Golden Star's activities because Plaintiffs' sent Golden Star a letter demanding that it cease selling the Unauthorized Products and cease use of the VIMTO product name. To date, Golden Star claims it has ceased its unauthorized activities but refuses to verify that statement, the extent of its infringing sales, or

sign a declaration confirming its sales volume and agreeing not to sell Unauthorized Products in the future.

21. The Unauthorized Products and ZB's legitimate VIMTO products bearing the appropriate U.S. VIMTO label are sold to similar purchasers and marketed in similar channels and to similar consumers.

22. The Unauthorized Products' bottles bearing the Middle East VIMTO label is similar in appearance to the bottles of ZB's licensed VIMTO beverage products bearing the legitimate U.S. VIMTO label, including the VIMTO trademark. Therefore, the purchasing public is likely to confuse the Unauthorized Products with the authorized VIMTO beverage products, or otherwise mistakenly believe that the Unauthorized Products are authorized for sale in the U.S. by Plaintiffs.

23. Golden Star has knowingly and willfully offered for sale and sold the Unauthorized Product under the VIMTO trademark and bearing the Middle East VIMTO label in the United States and in this judicial district.

## COUNT I
### *Federal Trademark Infringement and Unfair Competition Under the Lanham Act*

24. Plaintiffs repeat and reallege paragraphs 1 through 23 as though fully set forth in this count.

25. For many years Plaintiffs have imported, marketed, sold, and distributed beverage products in the United States and in the State of Illinois under the trademark VIMTO. The mark VIMTO is distinctive and denotes Nichols as the origin of the products sold under that mark. Furthermore, U.S. customers associate the mark VIMTO with Plaintiffs.

8

26. After Plaintiffs began importing, marketing, distributing, and selling products in the U.S. under the VIMTO trademark, Golden Star began marketing, distributing, and selling the Unauthorized Products.

27. The acts of Golden Star complained of herein constitute trademark infringement and unfair competition in violation of 15 U.S.C. § 1114, 1124, and 1125(a).

28. Golden Star's infringement of the VIMTO trademark is intentional, willful and deliberate.

29. Due to Golden Star's activities alleged above, purchasers and prospective purchasers of Golden Star's Unauthorized Products are likely to be confused and deceived into believing, contrary to fact, that Golden Star's Unauthorized Products are authorized for sale and distribution in the U.S. or that they comply with U.S. laws.

30. Golden Star's activities alleged herein create a likelihood of confusion, mistake and deception, all to Plaintiffs' loss and damage.

31. Plaintiffs have suffered and will continue to suffer injury to their reputation and goodwill and other irreparable harm unless Golden Star is enjoined from continuing its intentional misconduct.

32. As a direct and proximate result of the actions of Golden Star alleged above, Plaintiffs have been damaged and will continue to be damaged.

33. Unless enjoined by this Court, Golden Star will continue to do the acts complained of in this Complaint and cause damage and injury, all to Plaintiffs' irreparable harm and to Golden Star's unjust enrichment.

## COUNT II
### *Illinois Deceptive Trade Practices*

34. Plaintiffs repeat and reallege paragraphs 1 through 33 as though fully set forth in this count.

35. For many years Plaintiffs have imported, marketed, sold, and distributed beverage products in the United States and in the State of Illinois under the trademark VIMTO. The mark VIMTO is distinctive and denotes Nichols as the origin of the products sold under that mark. Furthermore, customers associate the mark VIMTO with Nichols.

36. After Plaintiffs began importing, marketing, distributing, and selling products in the U.S. under the VIMTO trademark, Golden Star began marketing, distributing, and selling the Unauthorized Products.

37. Golden Star's activities alleged herein constitute unfair competition and deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1-510/7.

38. Unless Golden Star's conduct is enjoined, it will continue to cause harm to Plaintiffs and the public.

39. As a direct and proximate result of the actions of Golden Star alleged above, Plaintiffs have been damaged and will continue to be damaged.

40. Unless enjoined by this Court, Golden Star will continue to do the acts complained of in this Complaint and cause damage and injury, all to Plaintiffs' irreparable harm and to Golden Star's unjust enrichment.

## COUNT III
### *Illinois Common Law Trademark Infringement and Unfair Competition*

41. Plaintiffs repeat and reallege paragraphs 1 through 40 as though fully set forth in this count.

42. For many years Plaintiffs have imported, marketed, sold, and distributed beverage products in the United States and in the State of Illinois under the trademark VIMTO. The mark VIMTO is distinctive and denotes Nichols as the origin of the products sold under that mark. Furthermore, customers associate the mark VIMTO with Nichols.

43. ZB owns the exclusive right to distribute VIMTO products within the United States.

44. After Plaintiffs began importing, marketing, distributing, and selling products in the U.S. under the VIMTO trademark, Golden Star began marketing, distributing, and selling the Unauthorized Products.

45. Golden Star's activities alleged herein constitute a violation of Illinois common law as Golden Star has used in commerce words, terms, symbols, devices, names, or combinations thereof, or a false designation of origin which is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Golden Star with Plaintiffs or as to the origin, sponsorship, or approval of Golden Star's products by Plaintiffs.

46. Golden Star has unfairly competed with ZB by usurping ZB's exclusive right to sell distribute VIMTO products in the United States and by selling unauthorized VIMTO products below market price in competition with ZB's authorized VIMTO products.

47. Unless Golden Star's conduct is enjoined, it will continue to cause harm to Plaintiffs and the public.

48.     As a direct and proximate result of the actions of Golden Star alleged above, Plaintiffs have been damaged and will continue to be damaged.

49.     Unless enjoined by this Court, Golden Star will continue to do the acts complained of in this Complaint and cause damage and injury, all to Plaintiffs' irreparable harm and to Golden Star's unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor on each and every claim for relief set forth above and an award for relief including, but not limited to, the following:

A.     An Order that Golden Star and its respective officers, agents, servants, employees, attorneys and all other persons in active concert or participation with them, are permanently enjoined from:

(i)     manufacturing, importing, marketing, offering to sell and selling the Unauthorized Products or any similar product bearing the VIMTO trademark or a colorable imitation of the VIMTO trademark that is not authorized for sale in the U.S.; and

(ii)    using the name or mark VIMTO or any confusingly similar mark, name, domain name, or colorable imitation thereof, in any way which misleads or confuses anyone as to the source, affiliation, or sponsorship of goods or services offered under such marks.

B.     An Order directing Golden Star to file with this Court and serve on Plaintiffs' attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction.

C. An Order that Golden Star account for and pay to Plaintiffs all gains, profits and advantages, including prejudgment and post-judgment interest, derived from its acts of infringement, false designation of origin, and unfair competition, and trebling such profits in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws.

D. An Order that Golden Star account for and pay to Plaintiffs all damages sustained by Plaintiffs by Golden Star's trademark infringement and unfair competition accordance with 15 U.S.C. § 1117 and other applicable statutes and laws.

E. An Order that Golden Star surrender to Plaintiffs all Unauthorized Products.

F. An Order that Golden Star surrender to Plaintiffs all labels, signs, prints, packages, wrappers, receptacles and advertisements bearing the VIMTO trademark and not authorized for sale or distribution in the U.S. or any reproduction, counterfeit, copy, derivative or colorable imitation thereof, and all plates, molds, matrices, screens, or other means of making the same.

G. An Order directing Golden Star to remove from all websites that it owns or controls, directly or indirectly, photos or illustrations of the Unauthorized Products, or any reproduction, counterfeit, copy, derivative or colorable imitation of the labels thereon, and any variations thereof;

H. An Order requiring Golden Star to pay to Plaintiffs punitive damages in an amount as yet undetermined caused by the foregoing intentional, willful and deliberate acts of Golden Star.

I. An Order requiring Golden Star to pay Plaintiffs' costs and attorney fees pursuant to 15 U.S.C. § 1117.

J. Any other further and different relief as the Court deems proper under the circumstances.

## JURY DEMAND

Plaintiffs demand trial by jury on all matters and issues that may be tried by a jury.

Dated: July 2, 2015

*/s/Larry L. Saret*
Larry L. Saret (2459337)
  llsaret@michaelbest.com
Paul R Coble (6296105)
  pcoble@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 North Stetson Avenue, Suite 2000
Chicago, IL  60601
Telephone:  312-222-0800

*Attorneys for Plaintiffs,*
*Nichols plc and ZB Importing, Inc.*